IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY B. O'NEAL,

    Plaintiff,

vs.                                                              No. CIV 97-1269 MV/LFG

FERGUSON CONSTRUCTION
COMPANY,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Objection to Form of Judgment and Request for Amendment, filed November 6, 1998 **[Doc. No. 67]**, Plaintiff's Motion to Amend Judgment to Include Pre- and Postjudgment Interest, filed November 13, 1998 **[Doc. No. 74]**, Plaintiff's Motion for an Award of Attorney's Fees, filed November 30, 1998 **[Doc. No. 84]**, Ferguson Construction Company's Motion for Remittitur or to Modify or Alter the Judgment by Imposing the Statutory Limitations on Damages, filed November 9, 1998 **[Doc. No. 68]**, and Ferguson Construction Company's Motion for Judgment Notwithstanding the Verdict, or as a Matter of Law, or in the Alternative, a Motion for New Trial, filed November 9, 1998 **[Doc. No. 70]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that Defendant's motions are not well taken and will be **denied**, that Plaintiff's motions to amend the judgment and for attorney's fees are well taken and will be **granted**, and that Plaintiff's objection to the form of judgment will be **denied as moot**.

**Background**

In this employment discrimination case Plaintiff Henry O'Neal prevailed at trial on some of his claims when the jury returned a verdict in his favor specifying $305,721.25 in compensatory damages and $3,500 in punitive damages. Mr. O'Neal, a former long-time employee of Defendant Ferguson Construction Company, had alleged that Ferguson discriminated against him on the basis of his race by creating a hostile work environment, retaliated against him when he filed a discrimination charge with the Equal Employment Opportunity Commission, and retaliated further when he filed a retaliation charge with the EEOC. In its special verdict the jury found in favor of Ferguson on the hostile environment claim, found that retaliation was a motivating factor in Ferguson's decision to reduce Mr. O'Neal's work hours and to terminate him, and also found that Ferguson did not prove that it would have taken the same decisions in the absence of an impermissible motive. Lastly, the jury found that Ferguson's actions had been malicious, willful, and in gross disregard for Mr. O'Neal's rights. The Court entered judgment accordingly; these post trial motions follow.

In its motion for judgment notwithstanding the verdict, Ferguson argues three points: that the evidence did not support the jury's finding of retaliation, that the Court improperly admitted into evidence the filing of EEOC charges without admitting the EEOC's conclusions of no probable cause, and that the jury instruction on future emotional damages was not supported by the evidence. In its motion for remittitur, Ferguson argues that the Court should apply in this case the limitation on damages that Title VII of the Civil Rights Act imposes.

For his part, Mr. O'Neal requests attorney's fees, costs, and interest in his objection to the form of judgment, and also asks the Court in separate motions to award attorney's fees and pre- and

postjudgment interest.

## Discussion

**I    The motion for judgment notwithstanding the verdict**

Turning to Ferguson's motion for judgment notwithstanding the verdict, the Court addresses Ferguson's first and most significant point, that the evidence at trial was insufficient to support the jury's finding of retaliation. As the lynchpin of this argument Ferguson contends that any of its actions that could support a charge of retaliation were too remotely connected in time to have legal significance. Accordingly, Ferguson argues that Mr. O'Neal failed to show a prima facie case of retaliation. Ferguson then claims that even if he did, he failed to show that its stated reasons for its actions following Mr. O'Neal's filing of two EEOC charges were pretextual.

Under Fed. R. Civ. P. Rule 50 and its construing case law, when reviewing a motion for judgment as a matter of law, a court may grant the motion "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1450 (10th Cir. 1997). The Court can not weigh the evidence, pass on the credibility of witnesses, or substitute its conclusions for that of the jury. *Id.*; *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir. 1997). While construing the evidence and inferences therefrom most favorably to the nonmoving party, *Wolfgang*, 111 F.3d at 1522, the Court must grant the motion if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Mason*, 115 F.3d at 1450, *quoting Harolds Stores, Inc. v. Dillards Dep't Stores, Inc.*, 82 F.3d 1533, 1546-47 (10th Cir. 1996), *cert. denied*, 117 S.Ct. 297 (1996).

In a retaliation case, "following a full trial on the merits the issue is whether [a plaintiff] has

presented sufficient evidence for the jury to determine that adverse employment action was taken against him in response to the protected activity." *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998). For both of Mr. O'Neal's charges with the EEOC, Ferguson focuses on the temporal connection between the filing of those charges and its alleged retaliatory actions, stating that the lapse of time between the filings and its actions could not, as a matter of law, support the retaliation charge.

For the first retaliation claim, Ferguson argues that it reduced Mr. O'Neal's work hours on January 13, 1997, some three months after the filing of the October 22, 1996, EEOC claim. For the second retaliation claim, Ferguson explains that the adverse action it took against Mr. O'Neal, namely his termination on September 19, 1997, came many months after his January 29, 1997, second EEOC claim. For both instances Ferguson claims that the length of time between the protected act and the adverse action, as a matter of law, precludes an inference of a causal connection between the two, and thus a finding of retaliation, suggesting that a lapse of time sufficient for such an inference is two days, citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993). Also citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir. 1997), and *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390 (10th Cir. 1997), Ferguson advances that a lapse of time of between three to four months is simply too long to give rise to an inference of retaliation.

The cases cited by Ferguson do indeed hold in part that a three to four month time lag between participation in protected activity and adverse action is not sufficient to justify an inference that an employer retaliated against an employee. *See Conner*, 121 F.3d at 1395; *Richmond*, 120 F.3d at 209. Yet the Court does not read either of those cases as broadly as Ferguson. In each instance, the Tenth Circuit discussed inferences of causation that could, without more, arise from temporal

4

connections to satisfy a plaintiff's prima facie burden of showing causation. In *Richmond*, the court agreed that "a three-month period between the activity and termination, *standing alone*, does not establish a causal connection," *Richmond*, 120 F.3d at 209 (emphasis added), but went on to state that "while retaliatory intent may be inferred from adverse action which 'closely followed' [a] plaintiff's protected activity, 'the phrase 'closely followed' must not be read too restrictively where *the pattern of retaliatory conduct* begins soon after the filing of [a] complaint and only culminates later in actual discharge.'" *Id.*, quoting *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996), *cert. denied*, 518 U.S. 1019 (1996) (emphasis in original). In *Conner*, the court expressly stated that, where close temporal proximity is lacking, a plaintiff could rely "on additional evidence beyond mere temporal proximity to establish causation." *Conner*, 121 F.3d at 1395. Both these cases show, then, that the temporal inquiry is conclusive only if a plaintiff presents no other evidence of retaliation.

Mr. O'Neal has presented other evidence which persuades the Court that the lapses of time in his case are not fatal to his claim. With respect to the first instance of retaliation, where Mr. O'Neal filed a charge of discrimination with the EEOC on October 22, 1996, Mr. O'Neal testified that soon after Ferguson learned of his complaint, Ferguson continued a pattern it had already started of gradually taking work away from him and transferring it to other employees. Mr. O'Neal explained that on the eve of Thanksgiving, shortly after receiving notice from the EEOC, Ferguson president Mr. Marc Wieser requested that Mr. O'Neal wash his vehicle, in freezing weather, a request Mr. Wieser had never made of Mr. O'Neal. Mr. O'Neal also testified that Mr. Wieser started to treat him with hostility, and that as a result of the reduced amount of work Ferguson was giving him, he had to deliberately start looking for ways to stay busy. Mr. O'Neal's wife Margaret stated

5

that the O'Neal family stopped socializing with fellow employee Wade Gardner and his wife, who had been close friends, in October 1996 because Mr. Gardner was concerned for his own job. Given this testimony, the Court concludes that Mr. O'Neal has shown enough other evidence of retaliation to establish necessary causation.

With respect to the second retaliation claim, Mr. O'Neal also has presented sufficient evidence to support the jury's verdict. Mr. O'Neal testified that following the reduction of his hours on January 13, 1997 from 56 to 33 per week he began to be isolated from other Ferguson employees. Mr. O'Neal repeatedly asked his immediate supervisor to request more hours for him from Ferguson management, yet his hours remained the same. Mr. O'Neal also testified that he tried to no avail to find other work with Ferguson's mechanics, and that he was consistently cut off from other employees.

Moreover, Mr. Wieser testified that Ferguson received a right to sue notice from the EEOC on September 10th, 1997. Five days later Ferguson transferred Mr. O'Neal to its warehouse, in a work environment where Mr. O'Neal had no experience and felt uncomfortable after having spent over 30 years maintaining Ferguson's fleet. Although Mr. O'Neal's wages remained the same and Mr. Wieser construed the transfer as a promotion, adverse employment action should not be defined narrowly, *Roberts*, 149 F.3d at 1104, and a lateral transfer even with no resulting reduction in pay or benefits can be an adverse job action. *Collins v. State of Illinois*, 830 F.2d 692, 702-03 (7th Cir. 1987). Finally, one day after Mr. O'Neal's counsel informed Ferguson of Mr. O'Neal intention to file a retaliation and discrimination lawsuit, Ferguson terminated Mr. O'Neal. Filing a lawsuit complaining of discrimination is protected activity. *See* 42 U.S.C. §2000e-3(a); *Mullenix v. Forsyth Dental Infirmary for Children*, 965 F. Supp. 120, 149 (D. Mass. 1996); *see also Medlock v. Ortho*

*Biotech, Inc.*, __ F.3d __, 1999 WL 2474 at *3 (10th Cir. 1999). There was ample evidence at trial, therefore, for the jury to conclude that the necessary causation existed, and despite the significant lapse of time between the January 13 filing and the September 19 termination, Mr. O'Neal has provided enough evidence of a pattern of retaliatory conduct which, begun after the filing of his first claim, continued after the filing of his second claim and was in direct response to that claim and to his threat of litigation, culminating in his actual discharge. *See Richmond*, 120 F.3d at 209.

The jury could reasonably conclude that the reasons Ferguson presented for its actions were pretextual, and "was fully entitled not to find this evidence credible." *Medlock*, 1999 WL 2474 at *4. With respect to the removal of Mr. O'Neal's responsibilities of fueling and maintaining Ferguson's fleet, Ferguson employees testified that Ferguson had experienced tool loss by leaving vehicles in the yard, and that this loss diminished when employees were allowed to take the vehicles home. While Mr. O'Neal did not offer a direct contradiction to this testimony, he is not required to do so. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). Ferguson chief financial officer Ms. Rita Staton also testified that Ferguson experienced a downturn in business in late 1996 that necessitated a curtailing of Mr. O'Neal's work hours. Yet Ms. Staton also testified that for the fiscal year ending March 31, 1996, Ferguson had sales of ten million dollars, an average revenue year, and for the year ending March 31, 1997, sales of seventeen million. Even taking into account an unusual 5 million dollar pipe purchase which Ferguson passed through to a customer, the testimony of Ferguson's own employees showed at least steady, if not rising revenues for 1996 and 1997, which reasonably could lead the jury to discredit Ferguson's stated economic reasons for its actions and thus call into doubt its stated reasons concerning tool loss.

Turning next to the Court's evidentiary rulings, the Court examines the contention that it

7

erred when it admitted evidence of non-parties' EEOC charges but did not admit evidence as to the outcome of those charges. Ferguson only argues that in its ruling, the Court failed to properly balance evidence of EEOC filings pursuant to Rule 403. The Court allowed evidence that former Ferguson employee Mr. Michael Pearson filed an EEOC charge, however, on the premise that "[a]s a general rule, the testimony of other employees about their treatment by [a] defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990); *see also Curtis v. Oklahoma City Public Schools Bd.* 147 F.3d 1200, 1217 (10th Cir. 1998). The Court also allowed testimony that a non-employee, Mr. John White, filed an EEOC complaint of racial discrimination because of its relevance to the Plaintiff's charges of discriminatory animus and because other testimony stated that Ferguson was actively trying to reduce the number of African-Americans in its workforce. Under those circumstances the testimony of a job seeker was relevant. In attempting to introduce the EEOC's alleged determination of no probable cause for Mr. White's claim, Ferguson did not offer an exception to the hearsay rule, nor did Ferguson proffer evidence on how the EEOC arrived at its decision, nor indeed how such an administrative decision was relevant to the specific issues being tried. The Court did not err, therefore, in excluding any evidence of EEOC conclusions with respect to any EEOC charges by non-parties.

Lastly, the Court finds no merit in Ferguson's argument that there was insufficient evidence at trial to support a jury instruction on future emotional damages. Mr. O'Neal testified that he began seeing a psychiatrist before being terminated and tried to continue after his termination but could not afford treatment. Mr. O'Neal also testified to his sleeplessness and loss of appetite that continued through the date of trial. Mrs. O'Neal testified that her husband has changed from when she first met him, so that now he is more worried and very unhappy. In addition, Mrs. O'Neal stated that her

8

husband's sleeplessness, which started after he was terminated, is now much worse, and that he still has trouble eating. Based on all this testimony, a jury could reasonably conclude that Mr. O'Neal will suffer future emotional distress and allocate damages on that basis. The Court's jury instruction was proper.

**II      The motion for remittitur**

The basis for this attempt at reducing the jury's award is 42 U.S.C. § 1981a(b)(3), wherein Congress limits compensatory and punitive Title VII damages according the number of employees a defendant has in each of 20 or more calendar weeks for the current or preceding year.[1] Ferguson has provided affidavits showing that for calendar years 1997 and 1998, it had at most sufficient employees to invoke the $100,000 limitation which § 1981a(b)(3)(B) imposes. Mr. O'Neal does not dispute this averment, but instead argues that he sought relief not only under Title VII, but under 42 U.S.C. § 1981 and state law claims as well, thus defeating any limitations that may apply under § 1981a. § 1981a, of course, expressly excludes § 1981 from its scope. 42 U.S.C. § 1981a(b)(4). Ferguson, skirting the issue of Mr. O'Neal's state law claims, replies that because Mr. O'Neal was an at-will employee, he can find no relief under § 1981. The Court agrees that Mr. O'Neal never challenged the presumption under New Mexico law that he was an at-will employee, *see Hartbarger v. Frank Paxton Co.*, 857 P.2d 776 (N.M. 1993), but concludes that the protections of § 1981, under which Mr. O'Neal expressly sought relief, are broad enough to support the jury award so that Mr. O'Neal's recovery is not limited by § 1981a.

---

[1] § 1981a, part of the Civil Rights Act Amendments of 1991, both allows and limits damages in instances of intentional discrimination.

9

While § 1981 focuses in part on protecting contractual relationships, and while some trial courts have ruled that § 1981 does not protect at-will relationships, *see*, *e.g.*, *Hawkins v. Pepsico, Inc.*, 10 F. Supp.2d 548 (M.D. N.C. 1998), a recent decision from the Fifth Circuit Court of Appeals persuades this Court that Mr. O'Neal's retaliation claim is actionable under § 1981 despite his at-will status. In *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir. 1998) the plaintiff had brought a racial discrimination claim, alleging a violation of § 1981. *Id.* The trial court granted summary judgment on the basis that Ms. Fadeyi was an at-will employee, but on appeal the Fifth Circuit reversed. *Id.* Looking to the history of § 1981, the court first recognized that the holding of *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), limited § 1981's applicability to the inception of an employment relationship in racial harassment cases. *Fadeyi*, 160 F.3d at 1049. The court then noted, however, that in 1991 Congress significantly broadened § 1981, so that it now encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.*, *quoting* 42 U.S.C. § 1981(b). Nodding to the traditional at-will doctrine that subjects an employee to termination for "good cause, bad cause, or no cause at all," *Fadeyi*, 160 F.3d at 1049, the court went on to hold that an at-will relationship is sufficiently contractual to come under § 1981's protection. *Id.* at 1052. This Court will follow the same result for much the same reasons. Although obviously Texas' at-will employment law, which helped persuade the *Fadeyi* panel, is not at issue here, the policies announced in *Fadeyi* ring just as true in New Mexico as in Texas:

> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous

at-will doctrine "as leverage to incite violations of our state and federal laws."

*Id.*, *quoting Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (Kilgarlin, J., concurring).

That Mr. O'Neal prevailed not on a discrimination claim, but on a retaliation claim, does not change the result counseled by *Fadeyi*. Section 1981 is broad enough to encompass retaliation for the filing of discrimination claims. *Steverson v. Goldstein*, 24 F.3d 666 (5th Cir. 1994); *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38 (2nd Cir. 1984); *Pinkard v. Pullman-Standard,* 678 F.2d 1211 (5th Cir. 1982); *Sisco v. J.S. Alberici Const. Co., Inc.*, 655 F.2d 146 (8th Cir. 1981); *Collins v. Executive Airlines, Inc.*, 934 F. Supp. 1378, 1382 (S.D. Fla. 1996); *Cox v. Consolidated Rail Corp.*, 557 F. Supp. 1261 (D.C. D.C. 1983).

Lastly, although the Tenth Circuit has followed *Patterson* in *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973 (10th Cir. 1991), the court handed down *Trujillo* before the 1991 amendments to the Civil Rights Act, and the Tenth Circuit has at least implicitly recognized that retaliatory discharge is actionable under § 1981. *See Roberts*, 149 F.3d at 1110. Therefore, the Court rejects Ferguson's argument and will not apply the limitations of 42 U.S.C. § 1981a(b)(3).

**III     Plaintiff's motions for attorney's fees and expert witness fee**

Mr. O'Neal filed two motions dealing with these issues, one of which was an objection to the form of judgment and request for amendment [Doc. No. 67]. Because this motion is not in compliance with D.N.M.LR-Civ. 54, and because its points are taken up by later motions that do comply with local rules, the Court will dismiss this objection as moot.

In his motion for award of attorney fees [Doc. No. 84] Mr. O'Neal seeks both his attorney's

11

fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and expert fees, to the extent they are not already allowed by local rule 54.2, pursuant to 42 U.S.C. § 1988(c). In support of these requests Mr. O'Neal states that although he did not prevail on his hostile environment claim, the Court should consider him a prevailing party because of the jury's vindication of his retaliation claims. Mr. O'Neal has dutifully filed affidavits from his attorneys detailing their expended time, and has also provided the Court with an affidavit from attorney Mr. Steven Sanders, who is experienced in civil rights litigation and attests to the reasonableness both of Mr. O'Neal's attorney's hours spent in this litigation and the hourly fees proposed. In response, Ferguson argues that the Court should consider it the prevailing party on a substantial portion of Mr. O'Neal's case, his hostile environment claim, declare the fee issue a wash, and award fees to neither side. At the very least, Ferguson argues, the Court should substantially reduce any fee award to reflect that Mr. O'Neal was only partially successful in this litigation. Ferguson also contends that the Court should not award expert fees since as an at-will employee, Mr. O'Neal could not enjoy § 1981 protection.

The starting point for providing "a concise but clear explanation of [the] reasons for [a] fee award," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), is *Hensley*. In this attorney's fees case where respondents were successful on five of six issues, *id.* at 427-28, the Court cautioned that the amount of a fee award must be determined on the facts of each case, *id.* at 429, but provided general guidelines. Confirming lower court rulings that a plaintiff may be considered a prevailing party for purposes of § 1988 if he succeeds on "any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit," *id.* at 433, *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978); *see also Texas Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791 (1989), the Court went on to state that "[t]he most useful starting point for determining the

amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The inquiry does not end there, however, for courts must also consider whether a successful plaintiff, although a prevailing party, failed "to prevail on claims that were unrelated to the claims on which he succeeded," *id.* at 434, and whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* In cases where claims for relief involve a common core of facts or are based on related legal theories, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation... The result is what matters." *Id.*

Guided by these principles, the Court easily finds that, in prevailing on two counts of retaliation despite failing to convince the jury on his hostile environment claim, Mr. O'Neal was a prevailing party under § 1988. The Court also finds that Mr. O'Neal's claims of discrimination and retaliation involve a common core of facts and are based on related legal theories so that the results Mr. O'Neal obtained justify awarding him the totality of his requested fees, provided that they are reasonable and reflect a reasonable rate. Ferguson's retaliation against Mr. O'Neal arose both from his filing a discrimination complaint and his filing of a retaliation complaint. The evidence of discriminatory animus Mr. O'Neal presented could also go to explaining Ferguson's actions in retaliating against Mr. O'Neal. In similar factual circumstances, the Tenth Circuit held that no reduction of a fee award should be made for a plaintiff who prevails on a retaliation claim but fails to prove hostile work environment. *Roberts*, 149 F.3d at 1111.

Having ascertained that Mr. O'Neal is a prevailing party whose fee award the Court should not reduce because of his lack of success on his hostile environment claim, the Court determines a

lodestar figure by multiplying the hours Plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate. In addition to presenting the affidavit of Mr. Sanders, Counsel have submitted affidavits detailing the hours involved in bringing Mr. O'Neal's case to trial. The Court generally finds those hours reasonable, with a few minor exceptions. In their time records, counsel note a 13.2 hour entry for filing a complaint, research on hostile work environment, and other matters. The Court finds this time excessive and will reduce it by half. The drafting of a three count complaint is not a cumbersome exercise, the case law of hostile environment claims in the Tenth Circuit is sufficiently well-developed to call for minimal research, and the lead counsel in this case has represented to the Court that he is experienced in civil rights and employment litigation. Ferguson has not contested the hourly fee proposed for Mr. O'Neal's counsel, $150.00 for Mr. Travers as lead counsel, and $115.00 each for attorneys Ms. Holly Harvey and Mr. Brett Loveless, and the Court finds that these rates are eminently reasonable for civil rights and employment cases in this District. Moreover, these rates are consistent with those the Court has previously applied in civil rights litigation.

Despite concluding that both the time spent and the fees proposed are essentially reasonable, the Court is troubled by Mr. Sanders' explaining that Mr. O'Neal's attorneys have a one-third contingency fee contract and then implying that, in this civil rights case, Mr. O'Neal's counsel should recover more than they would in "other similar cases." Sanders Affidavit at 3. Mr. O'Neal's attorneys have not disclosed their contingency agreement to the Court, and while the Court can neither treat the contingency fee as a limitation on the size of a statutory award, *see Blanchard v. Bergeron*, 489 U.S. 87 (1989), nor hold that the statutory fee limits the contingency fee, *see Venegas v. Mitchell*, 495 U.S. 82 (1990), the Court must guard against creating a windfall for victorious

14

counsel. *See Hensley,* 461 U.S. at 430 n.4; *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986); *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1355 (10th Cir. 1992). In this case the contingency fee will be approximately $100,000.00, while attorney's fees as the Court has determined them will total approximately $39,000.00. In order to avoid over compensating Mr. O'Neal's counsel, the Court will grant the request for fees on the condition that the statutory fee award will be applied, dollar for dollar, to offset the contractual contingent fee. *See Venegas*, 495 U.S. at 84.[2]

Mr. O'Neal may, pursuant to the Court's ruling that he has prevailed under 42 U.S.C. § 1981, recover his expert witness fees under § 1988(c), to the extent that local rule 54.2(c)(2) does not provide for such recovery.

## IV  Plaintiff's motion for and pre- and postjudgment interest

Mr. O'Neal in this motion asks the Court to award postjudgment interest pursuant to 28 U.S.C. § 1961(a) and prejudgment interest on the portion of the jury's award that compensates him for back pay, arguing that his back pay is readily ascertainable from the testimony presented at trial. Ferguson, focusing many of its arguments on points Mr. O'Neal did not raise, advances in relevant part that the jury award is ambiguous with respect to back pay, and that therefore the Court should not award prejudgment interest on that component of the jury's verdict. Ferguson does not dispute, however, Mr. O'Neal's recapitulation of the evidence from which the Court could determine back

---

[2] A fee award, of course, goes to Mr. O'Neal under § 1988, *Venegas*, 495 U.S. at 87-88, and conceivably this fee could be added to the total of Mr. O'Neal's recovery, rather than remitted by Mr. O'Neal to his attorneys. The Court has scant information on the fee agreement into which Mr. O'Neal entered, however, and even under such an arrangement his counsel could enjoy a windfall through the compounding of the contingent agreement and the statutory fee award. The Court considers the approach it is now taking, therefore, as the one more faithful to its duty to guard against windfalls.

pay.

In support of their respective arguments, both sides point to *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290 (7th Cir. 1987), an opinion by Judge Easterbrook which provides significant guidance. In *Handy Button* a jury awarded a plaintiff, in response to seven interrogatories, a sum to compensate her "for earnings lost and the present cash value of the earnings reasonably certain to be lost in the future." *Id.* at 1293. With an ambiguity thus created by this verdict, the court examined four possible methods of addressing this ambiguity, rejecting a suggestion that it should not award back pay interest out of concern that the amount of back pay was not readily determinable. *Id.* at 1298. Instead, the appellate court directed the lower court on remand to use its discretion in fashioning an interest award, *id.*, while noting that should "the ascertainment of the portion of the award representing back pay [become] too complex, [a] district court may choose to award none." *Id.* at 1299. Yet in *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906 (7th Cir. 1991), the Seventh Circuit may have retreated from its *Handy Button* position in ruling that, where a jury had returned only a general verdict comprising both back pay and emotional distress, the district court did not err in declining to award prejudgment interest on back pay. As the *Daniels* panel put it,

> when a plaintiff presents a district judge with a claim for prejudgment interest, he must have some basis on which to conclude that backpay accounts for some minimum amount of the compensatory damage award. Because the district judge had no means to parse the elements of the general verdict, prejudgment interest must be denied.

*Id.* at 925.

It is noteworthy that in both *Handy Button* and *Daniels*, however, the Seventh Circuit stopped short of requiring absolute certainty in a determination of a back pay award. *Compare Handy Button*, 817

16

F.2d at 1299 *with Daniels*, 945 F.2d at 925. *Handy Button* explained that

> [a]bsolute certainty [on an amount of back pay] is unavailable no matter what kind of instruction is given to the jury; it is also unnecessary. No purpose would be served by allowing the wrongdoer to keep the entire time value of money, just because the exact amount is subject to fair dispute. Once we know that back pay is at least some minimum, it is safe to award interest on that amount.

*Handy Button*, 817 F.2d at 1299.

Even assuming that *Daniels* restricted *Handy Button*'s reach, in this case there is compelling evidence of a basis on which to conclude that backpay in Mr. O'Neal's case accounts for some minimum of the compensatory damage award. The evidence at trial presented by both Mr. O'Neal and Ferguson employees showed conclusively that Mr. O'Neal earned $11.30 an hour from January 12, 1997, the date of his reduction in hours, to his termination on September 19, 1997. Prior to the hours reduction, Mr. O'Neal worked an average of 56 hours per week. After the reduction, he worked 33 hours per week for a weekly difference of 23 hours. Over the 35 weeks from January 13 to September 19, Mr. O'Neal lost, therefore, the sum of $9,096.50 in wages. The Court thus finds that the amount of back pay is readily determinable. Moreover, when the Court compares this amount with the jury's verdict, $305,721.25, it is satisfied that this backpay computation, gleaned in part from evidence Ferguson itself presented and which Ferguson does not contest in its motion, constitutes a minimum amount of back pay on which the Court can safely award interest. *See Gillespie v. First Interstate Bank,* 717 F. Supp. 649, 660 (E.D. Wisc. 1989).

Although neither party briefed the issue of which interest rate the Court should apply here, focusing on the time value of money from which Ferguson benefitted in 1997 by not paying Mr. O'Neal's full wages, the Court will use as a rate the average 52-week treasury bill rate for the period

of time between January 13 and September 19, 1997, compounded annually. *See Luciano v. Olsten Corp.*, 912 F. Supp. 663 (E.D. N.Y. 1996) (Title VII), *aff'd*, 110 F.3d 210 (2nd Cir. 1997); *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384 (9th Cir. 1994) (ERISA); 28 U.S.C. § 1961. Therefore, the Court will grant the request for prejudgment interest on the sum of $9,096.50, at 5.68%, calculated from the date of the filing of the answer in this case to the date that the Court entered judgment.

As Mr. O'Neal's request for postjudgment interest is unopposed and proper pursuant to 28 U.S.C. § 1961, the Court will award postjudgment interest on the full jury award at the rate of 4.242%, the rate in effect on October 29, 1998, the date the Court entered judgment in this case.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Ferguson Construction Company's Motion for Remittitur or to Modify or Alter the Judgment by Imposing the Statutory Limitations on Damages, filed November 9, 1998 **[Doc. No. 68]**, and Ferguson Construction Company's Motion for Judgment Notwithstanding the Verdict, or as a Matter of Law, or in the Alternative, a Motion for New Trial, filed November 9, 1998 **[Doc. No. 70]** be, and hereby are, **denied**, and that Plaintiff's Objection to Form of Judgment and Request for Amendment, filed November 6, 1998 **[Doc. No. 67]** be, and hereby is, **denied as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Judgment to Include Pre- and Postjudgment Interest, filed November 13, 1998 **[Doc. No. 74]** be, and hereby is, **granted**, and that Plaintiff's Motion for an Award of Attorney's Fees, filed November 30, 1998 **[Doc. No. 84]** be, and hereby, is **granted** on condition that the statutory fee award be applied, dollar for dollar, to offset the contractual contingency fee existing between Plaintiff and his attorneys. Defendant shall pay

Plaintiff's attorneys' fees plus interest and taxes as set forth in Appendix A to this opinion.

**IT IS FURTHER ORDERED** that Defendant pay Plaintiff's expert witness fees to the extent that local rule 54.2(c)(2) does not provide for such recovery.

**IT IS FURTHER ORDERED** that the judgment in this case be, and hereby is, **amended** to include the following interests, to be merged into the original judgment:

> Post-judgment interest of 4.242 percent on both the compensatory and punitive damages awards, calculated from October 29, 1998 to the date of payment, and pre-judgment interest of 5.68 percent on $9,096.50 only to run from October 21, 1997 to October 29, 1998.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

February 1, 1999

Counsel for Plaintiff
Brett Loveless
Holley Harvey
John Travers

Counsel for Defendant
W.T. Martin, Jr.
Stephen Shanor

# APPENDIX A

**Brett Loveless, Esq**.

| | | |
|---|---|---|
| Hours Expended: | 36.2 | |
| Less: | 6.6 | (excessive time spent on research and drafting complaint) |
| Total compensable hours | 29.6 | |
| X | | |
| Approved Rate | $115.00 per hour | |
| Total Fee awarded | $3,404.00 | |

**Holley R. Harvey, Esq**.

| | |
|---|---|
| Hours Expended | 148.9 |
| X | |
| Approved Rate | $115.00 per hour |
| Total Fee Awarded | $17,123.50 |

**John G. Travers, Esq**.

| | |
|---|---|
| Hours Expended | 123.7 |
| X | |
| Approved Rate | $150.00 per hour |
| Total Fee Awarded | $18,555.00 |

**TOTAL FEES AWARDED:**

| | |
|---|---|
| Mr. Loveless | $ 3,404.00 |
| Ms. Harvey | $ 17,123.50 |
| Mr. Travers | $ 18,555.00 |
| | **$ 39,082.50** |

The attorneys are to add applicable gross receipts tax. Interest at 4.242% is awarded from the date of this Order until paid.